1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KEO LAOSOUVANH,

11            Plaintiff,                    No. CIV S-06-00589 DAD

12        vs.

13   MICHAEL J. ASTRUE,                     ORDER
     Commissioner of Social Security,[1]
14
              Defendant.
15   _____/

16           This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment or, alternatively, for remand and defendant's

18   cross-motion for summary judgment.  For the reasons explained below, the undersigned will

19   grant plaintiff's motion for remand.

20                        **PROCEDURAL BACKGROUND**

21           Plaintiff Keo Laosouvanh applied for Supplemental Security Income benefits

22   under Title XVI of the Social Security Act (the Act) in January 2003.  (Transcript (Tr.) at 48-52.)

23   The Commissioner denied plaintiff's application initially on October 22, 2003, and upon

24   _____

25        [1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
     Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ.
26   P. 25(d)(1).

reconsideration on May 13, 2004.  (Tr. at 23-38.)  On June 14, 2004, plaintiff requested a hearing

before an administrative law judge (ALJ).  (Tr. at 39-40.)  Plaintiff was represented by counsel at

a hearing held on June 16, 2005.  (Tr. at 330-47.)  In a decision issued on July 27, 2005, the ALJ

determined that plaintiff was not disabled through the date of the decision.  (Tr. at 9-16.)  The

ALJ entered the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since January 23, 2003.
>
> 2.  The medical evidence establishes that the claimant has severe mild lumbar degenerative disc disease, spondylosis, and scoliosis, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 3.  The claimant's allegations regarding her inability to engage in ongoing standing, walking, sitting, lifting or carrying greater than about 5 to 10 pounds, or other basic work activities due to her medically determinable impairments cannot be credited because such complaints are not reasonably consistent with her medically determinable impairments and the record shows her lack of cooperation, exaggeration and possible malingering.
>
> 4.  The claimant has the residual functional capacity to perform work-related activities except for work involving lifting and carrying more than 25 pounds frequently or 50 pounds occasionally (20 CFR § 416.945).
>
> 5.  The claimant's past relevant work as a sewing machine operator did not require the performance of the work-related activities precluded by the above limitation(s) (20 CFR § 416.965).
>
> 6.  The claimant's impairment(s) do not prevent the claimant from performing her past relevant work.
>
> 7.  The claimant has not overcome the presumption of nondisability (AR 97-4(9)).
>
> 8.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(e)).

(Tr. at 15.)  On February 9, 2006, the Appeals Council denied plaintiff's request for review of the

ALJ's decision.  (Tr. at 4-8.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by

filing the complaint in this action on March 20, 2006.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?
> If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances five arguments in her motion for summary judgment.  First, plaintiff challenges the ALJ's finding that her mental impairments are not severe.  Second, plaintiff attacks the ALJ's finding that her statements concerning her impairments and limitations are not credible.  Third, plaintiff disputes the ALJ's findings that she had past relevant work and the residual functional capacity to perform that work.  Fourth, she contends that the ALJ erred in resolving a conflict in the medical evidence and rejecting her treating psychiatrist's opinion.  Fifth, plaintiff argues that the ALJ erred in applying Social Security Ruling 97-4(9) to find that she has not overcome the presumption of nondisability.[2]  The court finds that plaintiff's first argument is dispositive and requires remand of this action.  Accordingly, the court addresses only that argument below.

---

[2]  Plaintiff had filed a previous application for benefits and was found not disabled in an ALJ's decision dated May 28, 2002.  (Tr. at 12.)

1    At step two of the sequential evaluation the ALJ must determine if the claimant

2  has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d

3  1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The purpose of step two of

4  the sequential evaluation is merely to identify claimants whose medical impairments are so slight

5  that it is unlikely the claimants would be disabled even if age, education, and experience were

6  taken into account.  Yuckert, 482 U.S. at 153.  "An impairment or combination of impairments

7  can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more

8  than a minimal effect on an individual's ability to work.'"  Smolen, 80 F.3d at 1290 (citations

9  omitted).  See also 20 C.F.R. § 404.1521(a).

10    Here, plaintiff's disability application alleges impairment due to depression,

11  stress, anxiety, nightmares, a sleeping problem, concentration problems, stomach pain, shoulder

12  pain, and migraine headaches.  (Tr. at 12 & 55.)  Plaintiff alleges that these impairments prevent

13  her from engaging in prolonged sitting, standing, walking, reaching, lifting, concentrating, and

14  getting along with others.  (Tr. at 55.)

15    The ALJ found that plaintiff suffers from three severe impairments:  severe

16  lumbar degenerative disc disease, spondylosis, and scoliosis.  (Tr. at 15.)  With regard to

17  plaintiff's alleged mental impairments, the ALJ acknowledged medical records from the

18  Sacramento County Mental Health Clinic indicating that plaintiff "has been treated for major

19  depressive disorder, post-traumatic stress disorder, and panic disorder since at least the latter part

20  of 2002 with various psychotropic medications that reportedly were effective in improving her

21  mental status and sleep."  (Tr. at 12-13.)  The ALJ also took note of an August 2003 consultative

22  psychiatric examination and a September 2003 consultative examination indicating that

23              the claimant demonstrated coherent and organized thoughts but
             complained of seeing people who were not there and hearing
24              people's voices yelling at her and of having delusions and suicidal
             thoughts.  The examiner noted that her gait, posture and motor
25              behavior were normal and there was no apparent pain behavior and
             she was polite and cooperative but demonstrated a dysphoric mood
26              and a tearful affect.  She was able to recall 3 of 4 digits correctly

forward but not backward and could not recall any of the questions and indicated she did not know her date of birth or who the President was or how to perform simple calculations.  The diagnostic impression was major depressive and post-traumatic stress disorders preventing her from performing simple and repetitive tasks, maintaining regular attendance, completing a normal workday/workweek, dealing with usual work stresses. However, a licensed clinical social worker who performed a consultative examination the following month found no significant limitations.

(Tr. at 13 (citations omitted).)  The ALJ relied heavily on a comprehensive psychological evaluation of plaintiff in April 2005 that "incorporated a battery of psychometric tests including a test of memory malingering, the results of which were consistent with exaggeration of symptoms/malingering."  (Tr. at 13.)  The ALJ emphasized that

[d]uring the mental status examination the claimant indicated she did not know how old she was and identified her location as being Laos and was very poorly motivated and made an effort to convince the examiner of the severity of her impairments and claimed that she could not understand or perform the simplest of test items.  The diagnostic impression included rule out malingering, though it was not possible to accurately assess her true capabilities and limitations in view of her lack of cooperation and exaggeration.

(Tr. at 13 (citations omitted).)

The ALJ opined that exaggeration had been noted in the treating psychiatrist's records from the Sacramento County Mental Health Clinic:

Records from Hendry Ton, M.D., . . . indicate the claimant was seen on 6 occasions by the physician between March 2004 and April 2005, i.e., averaging approximately every 2 months. However, despite diagnoses of major depressive and post-traumatic stress disorders the treating source also noted the claimant's exaggeration (see, e.g., Exhibit B-20F/1).

(Tr. at 13.)  In fact, however, the exhibit cited by the ALJ in his decision does not contain the word "exaggeration" or any variant or synonym of the word, and does not state or imply malingering on plaintiff's part.  (Tr. at 319.)  The ALJ nevertheless concluded that Dr. Ton's Medical Assessment of Ability to Do Work-Related Activities (Mental), dated June 8, 2005,

1   could not be given any weight at all because the assessment "purport[ed] to show that the

2   claimant has no useful functional capacity in dealing with work stresses, functioning

3   independently, maintaining attention/concentration and in numerous other domains of

4   functioning"[3] and "it is apparent that that assessment was based upon the claimant's lack of

5   cooperation/exaggeration/ possible malingering." (Tr. at 13-14.)  The ALJ further concluded

6   that, "[a]lthough the claimant is being treated for major depression and post-traumatic stress

7   disorders, it is apparent that such treatment is based on subjective complaints which are not

8   supported by the evidence of record." (Tr. at 14.)  The ALJ disregarded all treating records and

9   instead adopted the assessment of a non-treating, non-examining consulting psychiatrist who

10  found that plaintiff has a nonspecific mood disorder that causes only mild limitations in her

11  functioning.  (Tr. at 14.)

12          The records of Sacramento County health facilities from October 24, 2002, to

13  April 20, 2005, show that plaintiff regularly sought treatment for anger, depression, difficulty

14  sleeping, and panic attacks.  (Tr. at 199-224.)  The mental status examination conducted on

15  October 24, 2002, revealed that plaintiff's mood was depressed and anxious, the impression was

16  that plaintiff exhibited depressive features and suffered from a panic attack disorder, and the

17  diagnosis at that time was "Major depressive disorder; PTSD; Panic disorder." (Tr. at 223-24.)

18  Subsequent treatment records show some improvement in plaintiff's sleep, although nightmares

19  continued, and plaintiff felt less sad and had fewer and less intense panic attacks.  (Tr. at 216-18.)

20  _____

21          [3]  In his June 8, 2005 assessment, Dr. Ton found that plaintiff has poor or no ability to
    relate to co-workers; deal with the public; interact with supervisors; deal with work stresses;
22  function independently; maintain attention and concentration; understand, remember, and carry
    out complex job instructions; understand, remember, and carry out detailed, but not complex, job
23  instructions; behave in an emotionally stable manner; and relate predictably to social situations.
    (Tr. at 317-18.)  Dr. Ton also found that plaintiff had only fair ability to follow work rules; use
24  judgment; understand, remember, and carry out simple job instructions; maintain personal
    appearance; and demonstrate reliability.  (Tr. at 317-18.)  He noted that plaintiff "becomes easily
25  overwhelmed, irritable and depressed, making concentration and interpersonal interactions
    impaired."  (Tr. at 317.)  Dr. Ton also found that plaintiff "has impairment in memory and
26  concentration due to her mental illness."  (Tr. at 318.)

On June 9, 2003, plaintiff felt less sad and was having panic attacks only three or four times a month, although she continued to hear voices. (Tr. at 221.) The June 9, 2003 diagnosis was "Post Traumatic Stress Disorder; Panic disorder; Major Depressive disorder with psychotic symptoms." (Tr. at 221.) A report dated August 25, 2003, indicates a diagnosis of "MDD with psychotic features, PTSD interval improvement with increase in Seroquel." (Tr. at 205.) On October 23, 2003, plaintiff continued to report poor sleep with nightmares and audio hallucinations, as well as feelings of sadness. (Tr. at 203.) On December 11, 2003, plaintiff reported that she was sleeping seven hours per night with diminished nightmares and auditory hallucinations and no longer felt sad but still had panic attacks once or twice a week. (Tr. at 202.) Between February 9, 2004, and April 20, 2005, despite some improvement with medication therapy, plaintiff continued to report sleep disturbance due to nightmares and irritability. (Tr. at 319-29.)

Dr. Rebecca Jordan examined plaintiff on behalf of the Social Security Administration in April 2003, found slight psychomotor retardation, and indicated that plaintiff appeared depressed but demonstrated poor reliability and cooperation. (Tr. at 231-32.) Four months later, Dr. Sanmukar Surulinathan examined plaintiff on behalf of the Social Security Administration. The mental status examination in August 2003 revealed a dysphoric mood, tearful affect, and impaired memory and judgment. The diagnosis was major depressive disorder single episode, severe with psychotic features; and post-traumatic stress disorder, chronic. Dr. Surulinathan opined that plaintiff's problem was treatable with an increase in medication, but that her post-traumatic stress disorder was more chronic, would need group therapy, and would improve only over time. (Tr. at 246.) With regard to functional capacity, Dr. Surulinathan stated that plaintiff did not have the capacity to perform simple calculations correctly, did not have the ability to perform either simple and repetitive tasks or detailed and complex tasks, "will not be able to maintain regular attendance in the workplace nor complete a normal workday/workweek without interruptions from her psychiatric condition," and "may not be able to deal with the usual

1   stress encountered in competitive work." (Tr. at 242-46.)  A month later, R.L. Thomas, a

2   licensed clinical social worker, stated in a report dated September 26, 2003, that he visited

3   plaintiff in her home and concluded that she probably did feel depressed, which would contribute

4   to her restricted daily routine.  (Tr. at 253-56.)  A year and a half later, Dr. Kimberly Stearns

5   examined plaintiff on behalf of the Social Security Administration yet again.  Dr. Stearns stated

6   in her report dated April 24, 2005, that plaintiff's motivation level was poor, test results and

7   clinical presentation suggested exaggeration of symptoms, and, due to suspected malingering, the

8   test results were considered invalid.  Her diagnosis was "Rule out Malingering; Rule out

9   Cognitive Disorder NOS; Rule out Depressive Disorder NOS; Rule out PTSD; Rule out Panic

10  Disorder, without Agoraphobia."  However, Dr. Stearns cautioned that her examination

11  "represents a brief and one-time examination" of plaintiff and found it "quite possible that the

12  claimant is suffering from genuine cognitive impairment."  (Tr. at 308-14.)

13                                           **CONCLUSION**

14              The record consistently demonstrates that plaintiff suffers from a mental

15  impairment or impairments.  Treating and consulting physicians and psychiatrists alike diagnosed

16  her as suffering from depressive disorders and PTSD.  She was also treated for these mental

17  conditions with medication therapy.  While the evidence of mental impairments may or may not

18  ultimately lead to a finding of disability, the court finds that the evidence is certainly more than

19  sufficient to establish that plaintiff's mental impairments clearly have more than a minimal effect

20  on her ability to work.  Thus, the ALJ obviously erred at step two of the sequential evaluation in

21  failing to identify plaintiff's mental impairments as severe.  In reaching this conclusion the court

22  is particularly mindful that the step-two inquiry is but "a de minimis screening device to dispose

23  of groundless claims."  Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54).  See also

24  Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001).

25              The Commissioner's decision that plaintiff does not have a severe mental

26  impairment or impairments is not supported by substantial evidence in the record as a whole, and

the proper legal standards were not applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223

F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599

(9th Cir. 1999).  In light of the record as a whole, the limited evidence relied upon by the ALJ is

not such relevant evidence as a reasonable mind might accept as adequate to support the

conclusion that plaintiff has no mental impairment that is severe.  Remand is required so that an

ALJ can apply the proper legal standard at step two of the sequential evaluation process and then

proceed beyond step two with respect to plaintiff's severe mental impairments and the combined

effects of all of plaintiff's impairments, both physical and mental.  See Webb v. Barnhart, 433

F.3d 683, 688 (9th Cir. 2005) (remanding for further proceedings where "[t]he ALJ should have

continued the sequential analysis beyond step two because there was not substantial evidence to

show that Webb's claim was 'groundless'").

        As noted above, in light of the error at step two, it is not necessary to address

plaintiff's remaining arguments.  See Sanchez v. Apfel, 85 F. Supp. 2d 986, 993 n.10 (C.D. Cal.

2000) ("Having concluded that a remand is appropriate because the ALJ erred in ending the

sequential evaluation at Step Two, this Court need not consider the issue of plaintiff's

credibility.").  On remand, an ALJ will necessarily be required to re-determine plaintiff's residual

functional capacity and re-consider whether plaintiff is capable of performing her past relevant

work, if she has any, or any other work in the national economy.  The ALJ will also be required

to evaluate plaintiff's subjective testimony and the testimony of any other witnesses regarding the

severity of plaintiff's limitations caused by the combined effects of all her impairments and the

impact those limitations have upon her.  If the ALJ proceeds to step five of the sequential

evaluation, the ALJ may well be required to question a vocational expert in a manner that

properly takes into account all limitations on plaintiff's abilities to engage in various work-

related mental functions.  See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001)

(explaining that testimony from a vocational expert was necessary because the claimant suffered

from a severe mental impairment).

1    In accordance with the above, IT IS ORDERED that:

2       1.  Plaintiff's motion for summary judgment is granted;

3       2.  Defendant's cross-motion for summary judgment is denied; and

4       3.  The decision of the Commissioner is reversed, and this case is remanded for

5    further administrative proceedings consistent with the analysis set forth herein.

6    DATED: September 17, 2007.

7

8    _____

9    DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

10   DAD:kw
     Ddad1/orders.socsec/laosouvanh0589.order

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26